UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ALEX BASICH, KRISTIN BONDLOW, MARQUIS BOYCE, JESSICA BREWER, and JAMARI BROWN, Individually and on Behalf of All Others Similarly Situated,<br><br>                              Plaintiffs,<br><br>        v.<br><br>MICROSOFT CORPORATION,<br><br>                              Defendant. | No.<br><br>**COMPLAINT—CLASS ACTION**<br><br>**JURY DEMAND** |

## CLASS ACTION COMPLAINT
### (AND DEMAND FOR JURY TRIAL)

Plaintiffs Alex Basich, Kristin Bondlow, Marquis Boyce, Jessica Brewer, and Jamari Brown (together, "Plaintiffs"), individually and on behalf of all others similarly situated, bring this Class Action Complaint against the Microsoft Corporation ("Defendant" or "Microsoft") for its violations of the Illinois Biometric Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA"), and allege the following based upon information and belief and personal knowledge where applicable.

## SUMMARY OF ALLEGATIONS

1.      This is a class action against Microsoft for collecting, storing, and using Plaintiffs' biometric identifiers and/or biometric information, including voiceprints, without providing the required notice and obtaining the required consent pursuant to BIPA.

COMPLAINT - 1

2.      BIPA defines a "biometric identifier" as any personal feature that is unique to an individual. 740 ILCS 14/10. It defines "biometric information" as any information based on a biometric identifier, regardless of how it is converted or stored. *Id.* Biometric identifiers and biometric information are collectively referred to as "biometrics." *Id.*

3.      A voiceprint, which is an individually unique and distinctive pattern of certain voice characteristics that identify a person, is comprised of and uses biometric information, and it is expressly defined as a "biometric identifier" under BIPA. *See Id.*

4.      As the Illinois Legislature recognized in its legislative findings for BIPA:

> Biometrics are unlike other unique identifiers that are used to access finances or other sensitive information. For example, social security numbers, when compromised, can be changed. Biometrics, however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions.

740 ILCS 14/5(c).

5.      BIPA does not prohibit companies from using their consumers' biometrics for certain purposes, including identification and authentication. In recognition of the unique nature and attendant risks of biometrics, however, BIPA established safeguards for consumers by regulating how private entities may collect, use, and/or store individuals' biometric identifiers and/or biometric information.

6.      BIPA provides, *inter alia*, that private entities such as Defendant may not collect, capture, or otherwise obtain an individual's biometrics, including a voiceprint, unless it first:

    a.      informs that person in writing that biometrics will be collected or stored;

    b.      informs that person in writing of the specific purpose and the length of term for which such biometrics are being collected, stored and used; and

    c.      receives a written release from that person for the collection of their biometrics.

740 ILCS 14/15(b)(1)-(3).

COMPLAINT - 2

7.    BIPA further requires that private entities in possession of biometric identifiers or biometric information develop a publicly available, written policy establishing a schedule for their retention and their destruction, within certain enumerated statutory time limits. 740 ILCS 14/15(a).

8.    Microsoft, a private entity, owns and operates Microsoft Teams, a video conferencing and virtual meeting platform offered across the United States and used by millions of individuals. As a feature of Microsoft Teams, Microsoft provides automated real-time transcription services, creating a written and archivable record of what was said, when, and by whom during a Microsoft Teams meeting.

9.    To distinguish speakers from each other and identify who is speaking at a given time in the meeting for transcription purposes, Microsoft obtains and applies voiceprints—individually unique and distinctive patterns of certain voice characteristics—from individuals in the meetings. These voiceprints are then stored in the Microsoft Azure servers.

10.    While obtaining voiceprints from Teams meeting participants, Microsoft failed to obtain participants' informed, written consent to do so prior to collecting and using those voiceprints to build transcriptions. Microsoft never informed Teams meeting participants that their biometrics, such as voiceprints, were being collected during Microsoft Teams meetings. Microsoft also failed to inform Teams meeting participants of the specific purpose for the collection or storage of their biometrics and failed to provide meeting participants with a schedule setting out the length of time which those biometrics would be collected, stored, used, and destroyed.

11.    Even though BIPA was created in 2008 and BIPA compliance (or lack thereof) has been the subject of significant litigation and legal commentary, Microsoft continues to violate BIPA by providing live transcription services in its Microsoft Teams platform through the unauthorized collection of Teams meeting participants' voiceprints. As result of Microsoft's ongoing BIPA violations, Plaintiffs, individually and on behalf of the other Class members, ask the Court to impose upon Microsoft the BIPA-mandated statutory damages relating to the

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

collection, storage, and use of Plaintiffs' biometrics, as well as injunctive relief requiring Microsoft to comply with BIPA's mandates.

## PARTIES

**A.    Plaintiffs**

12.    Plaintiff Alex Basich is a natural person and citizen of Illinois where he intends to remain. Plaintiff Basich uses Microsoft Teams and has been a participant in Teams meetings in which Microsoft meeting transcription was employed.

13.    Plaintiff Kristin Bondlow is a natural person and citizen of Illinois where she intends to remain. Plaintiff Bondlow uses Microsoft Teams and has been a participant in Teams meetings in which Microsoft meeting transcription was employed.

14.    Plaintiff Marquis Boyce is a natural person and citizen of Illinois where he intends to remain. Plaintiff Boyce uses Microsoft Teams and has been a participant in Teams meetings in which Microsoft meeting transcription was employed.

15.    Plaintiff Jessica Brewer is a natural person and citizen of Illinois where she intends to remain. Plaintiff Brewer uses Microsoft Teams and has been a participant in Teams meetings in which Microsoft meeting transcription was employed.

16.    Plaintiff Jamari Brown is a natural person and citizen of Illinois where she intends to remain. Plaintiff Brown uses Microsoft Teams and has been a participant in Teams meetings in which Microsoft meeting transcription was employed.

**B.    Defendant**

17.    Defendant Microsoft Corporation is a multinational technology company that provides, among its other services, Microsoft Teams, a team collaboration service for chats, virtual meetings, and video conferences. Microsoft is a Washington corporation and maintains its principal place of business at One Microsoft Way, Redmond, WA 98052.

COMPLAINT - 4

1

**JURISDICTION AND VENUE**

2
18.    This Court has jurisdiction over this action pursuant to the Class Action Fairness

3 Act, 28 U.S.C. § 1332, because (a) this is a proposed class action in which there are at least 100

4 Class members; (b) the parties are minimally diverse, as Plaintiffs and Defendant are citizens of

5 different states; and (c) the combined claims of Class members exceed $5,000,000, exclusive of

6 interest, attorneys' fees, and costs.

7
19.    This Court has personal jurisdiction over Defendant because Defendant is

8 incorporated in the State of Washington, and its principal place of business is also located within

9 this State.

10
20.    Venue is also appropriate in this District under 28 U.S.C. § 1391(b)(1) because the

11 Western District of Washington is the judicial district in which the Defendant resides and under

12 § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims

13 occurred in this District.

14

**FACTUAL BACKGROUND**

15 **A.    Illinois Biometric Information Privacy Act (BIPA)**

16
21.    The Illinois General Assembly enacted BIPA in 2008 to address the "very serious

17 need [for] protections … when it [comes to citizens'] biometric information" due to the high value,

18 specific nature and attendant risks of biometrics. Ill. House Tr., 2008 Reg. Sess. No. 276. The

19 Illinois legislature recognized "[b]iometrics are unlike other unique identifiers that are used to

20 access finances or other sensitive information." 740 ILCS 14/5(c). "For example, Social Security

21 numbers, when compromised, can be changed. Biometrics, however, are biologically unique to the

22 individual; therefore, once compromised, the individual has no recourse, is at heightened risk for

23 identity theft, and is likely to withdraw from biometric-facilitated transactions." *Id.*

24
22.    As a result, BIPA regulates, *inter alia*, "the collection, use, safeguarding, handling,

25 storage, retention, and destruction of biometric identifiers and information." 740 ILCS 14/5(g).

26

COMPLAINT - 5

Byrnes ♦ Keller ♦ Cromwell llp
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

23.    BIPA defines "biometric identifiers" as "a retina or iris scan, fingerprint, **voiceprint**, or scan of hand or face geometry." 740 ILCS 14/10 (emphasis added).

24.    "Biometric information," in turn, is identified as "any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual." *Id*.

25.    BIPA requires private entities—including companies such as Microsoft—that collect individuals' biometric identifiers or information, or cause such identifiers or information to be collected, to take several specific steps to safeguard the biometric data they collect and to get informed consent prior to obtaining biometric identifiers or information.

26.    With respect to safeguarding biometrics, BIPA requires that any private entities—including companies such as Microsoft—that possess biometric identifiers or biometric information:

> [D]evelop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first. Absent a valid warrant or subpoena issued by a court of competent jurisdiction, a private entity in possession of biometric identifiers or biometric information must comply with its established retention schedule and destruction guidelines.

*Id*. § 14/15(a).

27.    With respect to informed consent, BIPA provides that:

> No private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first:

> (1) informs the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored;

> (2) informs the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

COMPLAINT - 6

(3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative.

*Id*. § 14/15(b).

28.     BIPA provides for statutory damages, injunctive relief, reasonable attorney's fees and costs, and other relief "as the State or federal court may deem appropriate" when a private entity violates a consumer's rights under the statute. *Id*. § 14/20. Where a violation is the result of a private entity's negligence, BIPA provides for the greater of actual damages or $1,000 in liquidated damages per violation, and, if the violation was intentional or reckless, BIPA provides for the greater of actual damages and liquidated damages of $5,000 per violation. *Id*.

29.     BIPA further specifies that for the purposes of § 14/15(b), "a private entity that, in more than one instance, collects, captures, purchases, receives through trade, or otherwise obtains the same biometric identifier or biometric information from the same person using the same method of collection in violation of subsection (b) of Section 15 has committed a single violation of subsection (b) of Section 15 for which the aggrieved person is entitled to, at most, one recovery under this Section." *Id*. § 14/20 (b).

30.     As alleged herein, Microsoft's practices of obtaining its Microsoft Teams meeting participants' biometric information and identifiers during live meeting transcription without informed written consent violates all three prongs of Section 15(b) of BIPA. Microsoft's failure to provide a publicly available written policy regarding its schedule and guidelines for the retention and permanent destruction of these participants' biometric information and identifiers violates Section 15(a) of BIPA.

**B.     Microsoft's Collection and Use of Microsoft Teams Meeting Participants' Biometric Information and Identifiers During the Transcription Process**

31.     Microsoft Teams, created in 2017, is an immensely popular team communication and collaboration product from Microsoft. It is used by workplaces, schools, government agencies, families and friends in the United States and around the world for virtual meetings and video

COMPLAINT - 7

conferences. As relevant here, Microsoft makes Microsoft Teams available to users across the United States, including in the State of Illinois. While it does not publicly break down Microsoft Teams users by state, as of 2025, Microsoft Teams has approximately 320 million daily active users, generating over $8 billion per year in revenue.[1]

32.    To solidify its competitive advantage and market share, Microsoft regularly introduces updates and new features in Microsoft Teams. In 2021, Microsoft introduced live, automated transcription in Microsoft Teams, enabling Microsoft Teams users to create a real-time, archivable written record of meeting dialogue complete with speaker attributions and timestamps, as shown below:[2]



33.    Crucial to Microsoft's automated creation of an accurate written transcript from an audio recording is its process of "diarization," which Microsoft describes as, "differentiat[ing]

---

[1] Naveen Kumar, *Microsoft Teams Statistics 2025 (Users, Revenue & Market Share)*, DEMANDSAGE (June 17, 2025), https://www.demandsage.com/microsoft-teams-statistics/.
[2] Screenshot taken from Shalendra Chhabra, *Live transcription with speaker attribution now available in Teams meetings for English (US)*, MICROSOFT (March 23, 2021), https://techcommunity.microsoft.com/blog/microsoftteamsblog/live-transcription-with-speaker-attribution-now-available-in-teams-meetings-for-/2228817.

COMPLAINT - 8

speakers in an audio input based on their voice characteristics."[3] Put simply, this is the determination of "who said what, when."

34.    Diarization is a multistep process, the bulk of which upon information and belief takes place on Microsoft Azure servers due to the immense computational requirements.

35.    The diarization process pipeline begins with Microsoft recording the meeting and pre-processing the audio to reduce noise and improve clarity.

36.    It then uses Voice Activity Detection (VAD) to detect when someone is speaking and Speech Segmentation to divide the detected speech into smaller distinct portions as well as flag potential changes in audio features.

37.    Next, Microsoft extracts individual speaker profiles in the form of voiceprints, for each individual speaker from the speaker segments. These voiceprints capture the distinct vocal characteristics of the individual, including for example, their specific pitch, tone, and timbre. This information, stored as a series of numerical vectors, is unique to the individual and is akin to fingerprint or a faceprint.[4]

38.    Microsoft then uses these voiceprints to match and attach individual segments of speech to each speaker, and it uses preexisting information it has about the speaker in the meeting to fully identify the speaker for transcript attribution purposes.

39.    For Microsoft Teams account holders and users, as well as meeting participants without a Microsoft account, Microsoft utilizes identifying information which it can link to the individuals from whom it obtains voiceprints. For Microsoft Teams account holders and users, this includes names, profile pictures, email addresses, and the user's organization (if applicable).[5] For Microsoft Teams meeting participants who are not Microsoft Teams users or account holders, this

---

[3] *See Use Cases for Speech to text*, MICROSOFT AZURE AI FOUNDRY (June 24, 2025), https://learn.microsoft.com/en-us/azure/ai-foundry/responsible-ai/speech-service/speech-to-text/transparency-note.
[4] Faceprints are similarly broken down into unique mathematical vectors for facial recognition, as are fingerprints for Automated Fingerprint Identification (AFIS).
[5] *Profile cards in Microsoft 365*, MICROSOFT SUPPORT, https://support.microsoft.com/en-us/office/profile-cards-in-microsoft-365-e80f931f-5fc4-4a59-ba6e-c1e35a85b501.

COMPLAINT - 9

includes the name they provide when entering the Microsoft Teams meeting—and depending on the meeting organizer's company or entity—their email address as well.[6]

40.     Importantly, Microsoft does not, at any time, (1) inform Microsoft Teams meeting participants that it collects, obtains, uses, or generates voiceprints or any other biometrics from them as part of its transcription process; (2) indicate to Microsoft Teams meeting participants the specific purpose and length of term for which their biometrics are stored; and/or (3) obtain a written release from Microsoft Teams participants which permits BIPA-compliant use of voiceprints based on informed consent.

41.     In meetings where transcription is enabled, Microsoft provides a notice that transcription has begun, along with a link to the Microsoft Privacy Statement (in a blue hyperlink called "Privacy policy"):



42.     In the linked Microsoft Privacy Statement, however, Microsoft does not disclose that it obtains voiceprints during the live transcription of Microsoft Teams meetings, purport to gain the user's consent for the same, or even mention voiceprints at all. Indeed, the only reference

---

[6] *Join a Microsoft Teams meeting without an account in Microsoft Teams*, MICROSOFT SUPPORT, https://support.microsoft.com/en-us/office/join-a-meeting-without-an-account-in-microsoft-teams-c6efc38f-4e03-4e79-b28f-e65a4c039508.

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

to voice-related privacy at all in the Microsoft Privacy Statement appears in a section titled "Speech Recognition technologies" in which it refers to Microsoft employees and vendors being able to "review snippets of your voice data or voice clips," *i.e.* portions of your raw audio recording, in order to build and improve AI technology, and even then only "de-identified" and "with your permission" on an opt-in basis.

43.    Microsoft also lacks even a general BIPA-compliant policy detailing the retention schedule and guidelines for the permanent destruction of voiceprints obtained from Microsoft Teams users. Microsoft does not have a dedicated BIPA or Illinois-specific policy reflective of its collection of voiceprints from Microsoft Teams users, despite having a U.S. State Data Privacy Laws Notice which covers the laws of other states, such as California.[7] There is no justification for Microsoft's failure to maintain any privacy policy specific to Illinois, Illinois residents, or BIPA. To the contrary, the omission is reckless, if not intentional.[8]

44.    Simply put, this guidance is not BIPA-compliant. There is no indication of (1) whether Microsoft's handling of Microsoft Teams transcription follows the same retention protocols as for transcription handled by Microsoft's business and corporate-end clients who use its Azure AI Speech-to-Text technology; (2) whether the discarding of voice characteristics involves their "permanent destruction" as is required by Section 15(a) of BIPA; and (3) what processes are indeed used to discard or destroy the voice characteristics of individuals whose conversations are transcribed, *i.e.*, the "guidelines" regarding permanent destruction which Section 15(a) of BIPA also requires those in possession of biometrics to promulgate and disclose.

---

[7]    *U.S. State Data Privacy Laws Notice*, MICROSOFT (December 2025), https://www.microsoft.com/en-us/privacy/usstateprivacynotice.

[8]    In contrast, Microsoft does provide guidance for its business or corporate end-client of Azure AI Speech-to-Text technology which indicates that voice characteristics obtained during that speaker diarization for the "sole purpose" of transcript annotation are "temporarily retained" and then "discarded" once the process of annotating a transcription output is complete, *see* Yan-Li-MS2008, Announcing general availability of real-time diarization, Microsoft Azure AI Foundry Blog (May 21, 2024) https://techcommunity.microsoft.com/blog/azure-ai-foundry-blog/announcing-general-availability-of-real-time-diarization/4147556. However, even this is not a BIPA-related, Teams-specific policy and, regardless, it does not apply to individual or personal users at issue here.

COMPLAINT - 11

45.     What is more, Microsoft Teams meeting participants are never provided with a copy of this guidance during meetings where transcription occurs, further negating any existence of any informed consent under Section 15(b).

46.     Accordingly, Microsoft has violated BIPA in providing live transcription services on its Microsoft Teams platform. Plaintiffs and Class members are therefore entitled to BIPA-mandated statutory damages relating to the collection, storage, and use of Plaintiffs' biometrics, as well as injunctive relief requiring Microsoft to comply with BIPA's strict mandates.

**C.    Microsoft Violated Plaintiffs' Rights Under BIPA**

**1.    Plaintiff Basich**

47.     Plaintiff Alex Basich has and utilizes a Microsoft Teams account.

48.     Plaintiff Basich participated in a Microsoft Teams meeting in which live transcription was enabled by the meeting organizer.

49.     Upon information and belief, because the Microsoft Teams meeting was transcribed, Microsoft created a voiceprint containing detailed information regarding Plaintiff Basich's vocal characteristics during the Microsoft Teams meeting.

50.     This process included the collection, attempted collection, and/or obtaining of Plaintiff Basich's biometric identifiers or biometric information. It further involved the storage of his biometric identifiers or biometric information.

51.     At no point during the Microsoft Teams meeting (or afterward) was Plaintiff Basich informed that Microsoft would be collecting or obtaining his biometric identifiers or biometric information.

52.     Nor during the Microsoft Teams meeting or afterward did Microsoft ever inform Plaintiff Basich about the specific purpose for which his biometric identifiers and/or biometric information were being collected or stored, the length of term that his biometric identifiers or biometric information would be stored, or when or whether they would be permanently destroyed.

COMPLAINT - 12

53.     During the Microsoft Teams meeting, Microsoft never obtained, or attempted to obtain, Plaintiff Basich's informed, written consent to collect, capture, or otherwise obtain his biometric identifiers or biometric information. Plaintiff Basich was never provided a written release to Microsoft authorizing them to collect, store, or use his voiceprint, which uniquely identifies him, either during the Microsoft Teams meeting or afterward.

54.     Plaintiff Basich was not provided with a BIPA-compliant privacy policy either during the Microsoft Teams meeting or afterward. Further, Microsoft did not make a BIPA-compliant privacy policy readily accessible so that Plaintiff Basich could review it prior to participating in a meeting where transcription, and in turn, the collection of voiceprints, was enabled.

**2.     Plaintiff Bondlow**

55.     Plaintiff Kristin Bondlow has and utilizes a Microsoft Teams account.

56.     Plaintiff Bondlow participated in a Microsoft Teams meeting in which transcription was enabled by the meeting organizer.

57.     Upon information and belief, because the Microsoft Teams meeting was transcribed, Microsoft created a voiceprint containing detailed information regarding Plaintiff Bondlow's vocal characteristics during the Microsoft Teams meeting.

58.     This process included the collection, attempted collection, and/or obtaining of Plaintiff Bondlow's biometric identifiers or biometric information. It further involved the storage of her biometric identifiers or biometric information.

59.     At no point during the Microsoft Teams meeting (or afterward) was Plaintiff Bondlow informed that Microsoft would be collecting or obtaining her biometric identifiers or biometric information.

60.     Nor during the Microsoft Teams meeting or afterward did Microsoft ever inform Plaintiff Bondlow about the specific purpose for which her biometric identifiers and/or biometric

COMPLAINT - 13

information were being collected or stored, the length of term that her biometric identifiers or biometric information would be stored, or when or whether they would be permanently destroyed.

61.     During the Microsoft Teams meeting, Microsoft never obtained, or attempted to obtain, Plaintiff Bondlow's informed, written consent to collect, capture, or otherwise obtain her biometric identifiers or biometric information. Plaintiff Bondlow was never provided a written release to Microsoft authorizing them to collect, store, or use her voiceprint, which uniquely identifies her, either during the Microsoft Teams meeting or afterward.

62.     Plaintiff Bondlow was not provided with a BIPA-compliant privacy policy either during the Microsoft Teams meeting or afterward. Further, Microsoft did not make a BIPA-compliant privacy policy readily accessible so that Plaintiff Bondlow could review it prior to participating in a meeting where transcription, and in turn, the collection of voiceprints, was enabled.

**3.     Plaintiff Boyce**

63.     Plaintiff Jamari Boyce has and utilizes a Microsoft Teams account.

64.     Plaintiff Boyce participated in a Microsoft Teams meeting in which transcription was enabled by the meeting organizer.

65.     Upon information and belief, because the Microsoft Teams meeting was transcribed, Microsoft created a voiceprint containing detailed information regarding Plaintiff Boyce's vocal characteristics during the Microsoft Teams meeting.

66.     This process included the collection, attempted collection, and/or obtaining of Plaintiff Boyce's biometric identifiers or biometric information. It further involved the storage of her biometric identifiers or biometric information.

67.     At no point during the Microsoft Teams meeting (or afterward) was Plaintiff Boyce informed that Microsoft would be collecting or obtaining his biometric identifiers or biometric information.

Byrnes ♦ Keller ♦ Cromwell LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

68.     Nor during the Microsoft Teams meeting or afterward did Microsoft ever inform Plaintiff Boyce about the specific purpose for which his biometric identifiers and/or biometric information were being collected or stored, the length of term that his biometric identifiers or biometric information would be stored, or when or whether they would be permanently destroyed.

69.     During the Microsoft Teams meeting, Microsoft never obtained, or attempted to obtain, Plaintiff Boyce's informed, written consent to collect, capture, or otherwise obtain his biometric identifiers or biometric information. Plaintiff Boyce was never provided a written release to Microsoft authorizing them to collect, store, or use his voiceprint, which uniquely identifies him, either during the Microsoft Teams meeting or afterward.

70.     Plaintiff Boyce was not provided with a BIPA-compliant privacy policy either during the Microsoft Teams meeting or afterward. Further, Microsoft did not make a BIPA-compliant privacy policy readily accessible so that Plaintiff Boyce could review it prior to participating in a meeting where transcription, and in turn, the collection of voiceprints, was enabled.

**4.     Plaintiff Brewer**

71.     Plaintiff Jessica Brewer has and utilizes a Microsoft Teams account.

72.     Plaintiff Brewer participated in a Microsoft Teams meeting in which transcription was enabled by the meeting organizer.

73.     Upon information and belief, because the Microsoft Teams meeting was transcribed, Microsoft created a voiceprint containing detailed information regarding Plaintiff Brewer's vocal characteristics during the Microsoft Teams meeting.

74.     This process included the collection, attempted collection, and/or obtaining of Plaintiff Brewer's biometric identifiers or biometric information. It further involved the storage of her biometric identifiers or biometric information.

Byrnes ♦ Keller ♦ Cromwell LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

75. At no point during the Microsoft Teams meeting (or afterward) was Plaintiff Brewer informed that Microsoft would be collecting or obtaining her biometric identifiers or biometric information.

76. Nor during the Microsoft Teams meeting or afterward did Microsoft ever inform Plaintiff Brewer about the specific purpose for which her biometric identifiers and/or biometric information were being collected or stored, the length of term that her biometric identifiers or biometric information would be stored, or when or whether they would be permanently destroyed.

77. During the Microsoft Teams meeting, Microsoft never obtained, or attempted to obtain, Plaintiff Brewer's informed, written consent to collect, capture, or otherwise obtain her biometric identifiers or biometric information. Plaintiff Brewer was never provided a written release to Microsoft authorizing them to collect, store, or use her voiceprint, which uniquely identifies her, either during the Microsoft Teams meeting or afterward.

78. Plaintiff Brewer was not provided with a BIPA-compliant privacy policy either during the Microsoft Teams meeting or afterward. Further, Microsoft did not make a BIPA-compliant privacy policy readily accessible so that Plaintiff Brewer could review it prior to participating in a meeting where transcription, and in turn, the collection of voiceprints, was enabled.

**5.    Plaintiff Brown**

79. Plaintiff Jamari Brown has and utilizes a Microsoft Teams account.

80. Plaintiff Brown participated in a Microsoft Teams meeting in which transcription was enabled by the meeting organizer.

81. Upon information and belief, because the Microsoft Teams meeting was transcribed, Microsoft created a voiceprint containing detailed information regarding Plaintiff Brown's vocal characteristics during the Microsoft Teams meeting.

COMPLAINT - 16

82.     This process included the collection, attempted collection, and/or obtaining of Plaintiff Brown's biometric identifiers or biometric information. It further involved the storage of her biometric identifiers or biometric information.

83.     At no point during the Microsoft Teams meeting (or afterward) was Plaintiff Brown informed that Microsoft would be collecting or obtaining her biometric identifiers or biometric information.

84.     Nor during the Microsoft Teams meeting or afterward did Microsoft ever inform Plaintiff Brown about the specific purpose for which her biometric identifiers and/or biometric information were being collected or stored, the length of term that her biometric identifiers or biometric information would be stored, or when or whether they would be permanently destroyed.

85.     During the Microsoft Teams meeting, Microsoft never obtained, or attempted to obtain, Plaintiff Brown's informed, written consent to collect, capture, or otherwise obtain her biometric identifiers or biometric information. Plaintiff Brown was never provided a written release to Microsoft authorizing them to collect, store, or use her voiceprint, which uniquely identifies her, either during the Microsoft Teams meeting or afterward.

86.     Plaintiff Brown was not provided with a BIPA-compliant privacy policy either during the Microsoft Teams meeting or afterward. Further, Microsoft did not make a BIPA-compliant privacy policy readily accessible so that Plaintiff Brown could review it prior to participating in a meeting where transcription, and in turn, the collection of voiceprints, was enabled.

## CLASS ACTION ALLEGATIONS

87.     Plaintiffs bring this action as a class action pursuant to Rules 23(a), 23(b)(2), and (b)(3) of the Federal Rules of Civil Procedure, on behalf of a class defined as:

> All persons, whose biometric identifiers or biometric information was captured by Microsoft during the transcription of Microsoft Teams meetings in which they participated while residing (and/or present) in Illinois from March 1 2021 to the present other than those persons who voluntarily enrolled a Microsoft Intelliframe

COMPLAINT - 17

Byrnes ♦ Keller ♦ Cromwell LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

voice profile with Microsoft and were using their enrolled voice profile at the time of the transcription.

88.     Excluded from the Class are: (a) Defendant and any of its members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; (b) class counsel and their employees; and (c) the judicial officers and Court staff assigned to this case and their immediate family members.

89.     This action has been brought and may properly be maintained on behalf of the Class proposed herein under the prerequisites of Rule 23 of the Federal Rules of Civil Procedure.

90.     <u>Numerosity</u> (Fed. R. Civ. P. 23(a)(1)): The exact number of members of the Class is unknown and unavailable to Plaintiffs at this time, but the class is sufficiently numerous that individual joinder in this case is impracticable. Upon information and belief, plaintiff alleges that the class contains many thousands or tens of thousands of individuals, and the members can be identified through Defendant's records.

91.     <u>Commonality and Predominance</u> (Fed. R. Civ. P. 23(a)(2)): This action involves common questions of law and fact, which predominate over any questions affecting only individual Class members, including, without limitation:

a.      Whether Microsoft qualifies as a "private entity" as defined by BIPA, 740 ILCS 14/10;

b.      Whether Microsoft captures, collects, stores, otherwise obtains or distributes information that qualifies as "biometric identifiers" or "biometric information" from Microsoft Teams meeting participants, as defined by BIPA, 740 ILCS 14/10 & 14/15, *et seq.*;

c.      Whether Microsoft obtained an executed written release from each Microsoft Teams meeting participant before capturing their biometric identifiers and/or biometric information as required by BIPA, 740 ILCS 14/15(b);

d.      Whether Microsoft previously, or on an ongoing basis, collected, captured, purchased, received through trade, or otherwise obtained the biometric identifiers and/or biometric information of Microsoft Teams meeting participants, in violation of BIPA, 740 ILCS 14, *et seq.*;

e.      Whether Microsoft's conduct was and is willful, reckless, or negligent;

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

f.    The appropriate measure of damages to award Plaintiffs and the other Class members; and

g.    The appropriate injunctive relief to which Plaintiffs and the other Class members are entitled.

92.    <u>Typicality</u> (Fed. R. Civ. P. 23(a)(3)): Plaintiffs' claims are typical of the other Class members' claims that their biometric identifiers and/or biometric information were collected, captured, purchased, received through trade, or otherwise obtained by Defendant. Defendant did not inform Plaintiffs or the other Class members of such collection, capture, purchase, receiving through trade, or otherwise obtaining of such biometric identifiers and/or biometric information, and did not obtain written consent for this same capture, collection, purchase, receiving through trade, or otherwise obtaining of biometric identifiers and/or biometric information from Plaintiffs or the other Class members.

93.    <u>Adequacy of Representation</u> (Fed. R. Civ. P. 23(a)(4)): Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other Class members whom they seek to represent. Plaintiffs intend to vigorously prosecute this action, and Class members' interests will be fairly and adequately protected by Plaintiffs and their chosen counsel. Plaintiffs have retained counsel that is competent and experienced in complex class action and other privacy litigation (including successfully litigating class action cases similar to this one, where a defendant breached statutory privacy obligations), and Plaintiffs' counsel will devote the time and financial resources necessary to vigorously prosecute this action. Neither Plaintiffs nor their counsel have any interests adverse to the Class.

94.    <u>Declaratory and Injunctive Relief</u> (Fed. R. Civ. P. 23(b)(2)): Defendant acted or refused to act on grounds generally applicable to Plaintiffs and the other Class members, such that final injunctive and declaratory relief is appropriate with respect to the Class as a whole.

95.    <u>Superiority</u> (Fed. R. Civ. P. 23(b)(3)): A class action is superior to individual adjudications because joinder of all class members is impracticable, would create a risk of inconsistent or varying adjudications, and would impose an enormous burden on the judicial

COMPLAINT - 19

system. The amount-in-controversy for each individual class member is likely relatively small, which reinforces the superiority of representative litigation. As such, a class action presents far fewer management difficulties than individual adjudications, preserves the resources of the parties and the judiciary, and protects the rights of each class member.

96.     Plaintiffs reserve the right to revise the foregoing class allegations and definitions based on facts learned and legal developments following additional investigation, discovery, or otherwise.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**Violation of BIPA, 740 ILCS 14/15(a)**
**(On Behalf of Plaintiffs and the Class)**

97.     Plaintiffs reassert, reallege, and incorporate by reference paragraphs 1 through 96 as though fully set forth herein.

98.     Plaintiffs bring this claim individually and on behalf of all other Class members.

99.     Section 15(a) of BIPA requires:

A private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first. Absent a valid warrant or subpoena issued by a court of competent jurisdiction, a private entity in possession of biometric identifiers or biometric information must comply with its established retention schedule and destruction guidelines.

740 ILCS 14/15(a).

100.     Through its Microsoft Teams live transcription process as alleged above, Microsoft possessed and exercised control over the Plaintiffs' and other Class members' biometric information and biometric identifiers.

101.     Microsoft does not provide a publicly available retention schedule or guidelines for permanently destroying its Microsoft Teams users or participants' biometric identifiers and information as required by BIPA. Therefore, Microsoft has violated BIPA Section 15(a).

COMPLAINT - 20

102.    Defendant's violations of BIPA Section 15(a) were either intentional or reckless, or, pleaded in the alternative, negligent.

103.    Plaintiffs and the other Class members have been injured by Microsoft's conduct alleged herein, which injury includes the unknowing loss of control of their valuable biometric identifiers and/or biometric information, and violations of their privacy due to Microsoft's collection, capture, and storage of their biometric identifiers and/or biometric information. Accordingly, Plaintiffs seek: (i) injunctive and equitable relief as is necessary to protect the interests of Plaintiffs and the Class by requiring Microsoft to comply with BIPA's requirements for the collection, storage, and use of biometric identifiers and/or biometric information as described herein; (ii) statutory damages of $5,000 for each intentional and/or reckless violation of 740 ILCS 14/15(a) pursuant to 740 ILCS 14/20(a)(2) or, at a minimum, statutory damages of $1,000 for each negligent violation of 740 ILCS 14/15(a) pursuant to 740 ILCS 14/20(a)(1); and (iii) reasonable attorneys' fees, costs, and expenses pursuant to 740 ILCS 14/20(a)(3).

**SECOND CLAIM FOR RELIEF**
**Violation of BIPA, 740 ILCS 14/15(b)**
**(On Behalf of Plaintiffs and the Class)**

104.    Plaintiffs reassert, reallege, and incorporate by reference paragraph 1 through 96 as though fully set forth herein.

105.    Plaintiffs bring this claim individually and on behalf of all other Class members.

106.    Section 15(b) of BIPA *inter alia* provides that a private entity may not collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first:

> (1) informs the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and (3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative.

740 ILCS 14/15(b).

COMPLAINT - 21

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

107.    Microsoft is a private entity under BIPA. *See* 740 ILCS 14/10.

108.    Plaintiffs and the other Class members are individuals under BIPA. *Id.*

109.    Microsoft has captured, and continues to capture, Plaintiffs' and the other Class members' biometric identifiers and/or biometric information, including their voiceprints, in Microsoft Teams meetings in which live transcription is enabled.

110.    Voiceprints are a biometric identifier expressly protected by BIPA. *Id.*

111.    On information and belief, when it collected Plaintiffs' and other Class Members' voiceprints, Defendant also collected, captured or otherwise obtained biometric information based on Plaintiffs' and Class Members' voiceprints.

112.    The voiceprints and biometric information collected by Microsoft were capable of identifying individual Microsoft Teams meeting participants, particularly in conjunction with the other information Microsoft collects on Microsoft Teams meeting participants (including both users and non-users), such as names or usernames, profile pictures, email addresses, and organization. Indeed, for the purposes of generating a written transcript, Microsoft linked names and profile pictures of Microsoft Teams meeting participants to those from whom it obtained voiceprints.

113.    As alleged above, during the Microsoft Teams meetings where live transcription was enabled (and afterward), Microsoft did not inform Plaintiffs and Class Members in writing that their biometric identifiers and/or biometric information would be collected; did not inform Plaintiffs and Class Members in writing of the specific purpose and length of time that their customers' biometric identifiers and/or biometric information would be collected, stored, and used; and did not obtain written consent from Plaintiffs and Class Members based on informed consent affirming that, by participating in a transcribed Microsoft Teams meeting, their biometric identifiers and/or biometric information would be collected.

COMPLAINT - 22

114.    Upon information and belief, Microsoft is continuing to collect, capture, and store biometric identifiers and/or biometric information of Microsoft Teams meeting participants, without the specific informed consent required by BIPA.

115.    Based on the foregoing, Microsoft's violations of BIPA Section 15(b) were either intentional or reckless, or, pleaded in the alternative, negligent.

116.    Plaintiffs and the other Class members have been injured by Microsoft's conduct alleged herein, which injury includes the unknowing loss of control of their valuable biometric identifiers and/or biometric information, and violations of their privacy due to Microsoft's collection, capture, and storage of their biometric identifiers and/or biometric information. Accordingly, Plaintiffs seek: (i) injunctive and equitable relief as is necessary to protect the interests of Plaintiffs and the Class by requiring Microsoft to comply with BIPA's requirements for the collection, storage, and use of biometric identifiers and/or biometric information as described herein; (ii) statutory damages of $5,000 for each intentional or reckless violation of 740 ILCS 14/15(b) pursuant to 740 ILCS 14/20(a)(2), or at a minimum, statutory damages of $1,000 for each negligent violation of the 740 ILCS 14/15(b) pursuant to 740 ILCS 14/20(a)(1); and (iii) reasonable attorneys' fees, costs, and expenses pursuant to 740 ILCS 14/20(a)(3).

## **PRAYER FOR RELIEF**

Plaintiffs, individually and on behalf of all others similarly situated, respectfully request the following relief:

a.    Finding that this action satisfies the requirements for maintenance as a class action as set forth in Rule 23 of the Federal Rules of Civil Procedure and certifying the Class defined herein;

b.    Appointing Plaintiffs as representatives of the Class and their undersigned counsel as class counsel;

c.    Entering judgment in favor of Plaintiffs and the other Class members and against Defendant;

d.    Awarding Plaintiffs and the other Class members liquidated damages of $1,000 per negligent violation, $5,000 per willful or reckless violation, or actual damages, whichever is greater, for each of Defendant's BIPA violations;

COMPLAINT - 23

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

e.    Issuing an injunction ordering Defendant to comply with BIPA and enjoining them from engaging in further misconduct in violation of BIPA;

f.    Awarding reasonable attorneys' fees and costs, including expert witness fees and other litigation expenses, as provided for in 740 ILCS 14/20; and

g.    Granting such other and further relief as the Court deems appropriate.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs, individually and on behalf of all other Class members, demand a trial by jury on all claims so triable.

DATED this 5th day of February, 2026.

BYRNES KELLER CROMWELL LLP

By /s/ Bradley S. Keller
    Bradley S. Keller, WSBA #10665

By /s/ Jofrey M. McWilliam
    Jofrey M. McWilliam, WSBA #28441
    1000 Second Avenue, 38th Floor
    Seattle, Washington 98104
    Telephone: (206) 622-2000
    bkeller@byrneskeller.com
    jmcwilliam@byrneskeller.com

Brian Levin (*pro hac vice forthcoming*)
Nicholas Miranda (*pro hac vice forthcoming*)
LEVIN LAW, P.A.
2665 South Bayshore Drive, PH2B
Miami, Florida 33133
brian@levinlawpa.com
Nicholas@levinlawpa.com

Jonathan Waisnor (*pro hac vice forthcoming*)
James M. Fee (*pro hac vice forthcoming*)
LABATON KELLER SUCHAROW LLP
140 Broadway.
New York, NY 10005
Telephone: (212) 907-0700
jwaisnor@labaton.com
jfee@labaton.com

***Attorneys for Plaintiffs Alex Basich, Kristin Bondlow, Marquis Boyce, Jessica Brewer, Jamari Brown, and the Proposed Class***